# Exhibit A

E-FILED
6/21/2022 2:50 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
22CV399356
Reviewed By: R. Walker

**MILSTEIN JACKSON
FAIRCHILD & WADE, LLP**
Gillian L. Wade, State Bar No. 229124
gwade@mjfwlaw.com
Sara D. Avila, State Bar No. 263213
savila@mjfwlaw.com
Marc A. Castaneda, State Bar No. 299001
mcastaneda@mjfwlaw.com
10990 Wilshire Boulevard, 8th Floor
Los Angeles, California 90024
Tel: (310) 396-9600
Fax: (310) 396-9635

*Attorneys for Plaintiff and the proposed Class*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF SANTA CLARA

| | |
|---|---|
| HAI BUI, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> AMAZON.COM SERVICES LLC, a Delaware corporation, <br><br> Defendant. | **22CV399356** <br><br> Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> 1. Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* |

- 1 -

CLASS ACTION COMPLAINT

Plaintiff Hai Bui ("Plaintiff"), through undersigned counsel, brings this Class Action Complaint against Defendant Amazon.com Services LLC ("Defendant" or the "Amazon"), and alleges the following based upon information and belief, except as to allegations pertaining to Plaintiff, which are based upon personal knowledge.

## INTRODUCTION

1.     Plaintiff brings this action seeking injunctive and declaratory relief curtailing unlawful business practices related to consumer products designed, manufactured, distributed, sold, and warranted by Defendant.

2.     For years, Defendant has produced, marketed, and sold personal consumer goods, including the Echo Show 10 (the "Product") at issue in this litigation. Defendant also provides consumers with a one-year warranty for its products ("Warranty").

3.     In so doing, Defendant made and continues to make multiple representations to consumers that the Warranty is subject to carveouts expressly prohibited by federal law.

4.     Specifically, Defendant states to consumers that their Warranty will be void if the consumers use third-party repair services to fix their products.

5.     Yet this type of warranty-voiding condition, where the warranty is "tied" to exclusive repair by the manufacturer, is expressly prohibited by the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–2312 ("Magnuson-Moss," the "Act," or "MMWA"), and its implementing regulations 16 CFR §§ 700.1, *et seq.*

6.     Magnuson-Moss allows consumers to open their electronics without voiding the warranty, regardless of what the language of that warranty says. And this fact has far-reaching implications as manufacturers, such as Defendant, have stepped up their attempts to monopolize the device repair market.

7.     These intentional misrepresentations of law and fact are made to help manufacturers like Defendant maintain a monopoly on repairing the devices that they sell, and on manufacturing, marketing, and selling after-market parts and accessories. Most people won't attempt relatively simple, inexpensive repairs—or use inexpensive third-party repair services—if they believe that in doing so the manufacturer subsequently will refuse to honor the warranty.

8.      Plaintiff, individually and on behalf of all other similarly situated California consumers, seeks injunctive and declaratory relief against Defendant for its violations of Magnuson-Moss. Specifically, Plaintiff seeks to prevent Defendant from continuing to make material misrepresentations and omissions to California consumers as to their warranty rights, in violation of Magnuson-Moss.

## PARTIES

9.      Plaintiff Hai Bui is a resident of Santa Clara County, California.  On or about June 21, 2021, Plaintiff purchased the Product from Defendant, which was—and remains—subject to a warranty that Defendant states will be void if Plaintiff uses a third party for repair.

10.      Defendant Amazon is an online retail and media company headquartered in Washington.  Defendant manufactures a host of Amazon-branded consumer products, from a range of household goods to consumer electronics, which include the Echo Show 10 purchased by Plaintiff. Defendant generally oversees all aspects of these products, including but not limited to their design, manufacture, marketing, and warranty services

## JURISDICTION AND VENUE

11.      This Court has personal jurisdiction over Defendant because its headquarters is in California, it purposefully directs its conduct at California, transacts business in California, has substantial aggregate contacts with California, engaged and is engaging in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons in California, and purposely availed itself of the laws of California.

12.      Defendant's activities in California gave rise to the claims identified herein, both suffered by Plaintiff and by members of the proposed Class.  Defendant introduces its consumer electronics into the stream of commerce in California, including the television products purchased by Plaintiff and the Class, each of which are subject to the unlawful Warranty giving rise to the claims of Plaintiff and the Class.

13.      Venue is proper in this Court because Defendant has conducted business and entered into transactions in this County, and the conduct at issue occurred in, and/or emanated from, this County. Moreover, Plaintiff resides in this County.

CLASS ACTION COMPLAINT

**EXCLUSIVE STATE COURT JURISDICTION PURSUANT TO 15 U.S.C. § 2310**

14.     Exclusive jurisdiction for this Action lies with this Court, pursuant to 15 U.S.C. § 2310.

15.     Magnuson-Moss authorizes injured consumers to bring suit for "legal and equitable relief…in any court of competent jurisdiction in any State." 15 U.S.C. § 2310(d)(1)(A).

16.     However, the Act imposes specific limitations on the exercise of jurisdiction by federal courts, stating that "no claim shall be cognizable" in federal district court "(A) if the amount in controversy of any individual claim is less than the sum or value of $25; (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." *Id.* § 2310(d)(3)(A)-(C).

17.     In this Action, Plaintiff seeks equitable and declaratory relief individually and on behalf of all members of the Class, in the form of Defendant removing the provision in its Warranty that violates Magnuson-Moss's anti-tying provisions, in addition to nominal damages.  Under California law, nominal damages can be as low as $1 (*see, e.g., Avina v. Spurlock*, 105 Cal.Rptr. 198, 28 Cal.App.3d 1086 (Cal. App. 1972); *Belle Terre Ranch, Inc. v. Wilson*, 182 Cal.Rptr.3d 393, 232 Cal.App.4th 1468 (Cal. App. 2015), and in no event does Plaintiff or any member of the putative Class assert an individual claim for damages valued at $25 or greater.  Neither of the requirements for federal jurisdiction set forth under § 2310(d)(3)(A) or § 2310(d)(3)(B) is satisfied.

18.     Further, Plaintiff Hai Bui is the only named plaintiff in this action.  Because there are not one hundred named plaintiffs in this action, the requirement for federal jurisdiction set forth under § 2310(d)(3)(C) is not satisfied.

19.     Because none of the requirements for federal jurisdiction are satisfied under § 2310(d)(3), this Court has exclusive jurisdiction over this Action.

**COMMON FACTUAL ALLEGATIONS**

A.     **Magnuson-Moss and Its Prohibition of Tying Provisions in Consumer Warranties.**

20.     Magnuson-Moss is a consumer-protection law passed in 1975 to clarify how written warranties may be used when marketing products to consumers.[1]  Specific to this lawsuit, the law

---

[1] 15 U.S.C. §§ 2301, *et seq.*

prohibits warrantors from conditioning warranty coverage on the consumer's use of an article or service identified by brand, trade, or corporate name.[2]   More specifically, a warrantor cannot "condition the continued validity of a warranty on the use of only authorized repair service and/or authorized replacement parts for non-warranty service and maintenance (other than an article of service provided without charge under the warranty[)]."[3]

21.   The provision goes on to dissect an illustrative, violative statement—"This warranty is void if service is performed by anyone other than an authorized 'ABC' dealer and all replacement parts must be genuine 'ABC' parts"—stating that it violates Magnuson-Moss in two ways: first, it impermissibly ties repairs to the manufacturer, but second, "*a warrantor cannot, as a matter of law, avoid liability under a written warranty where a defect is unrelated to the use by a consumer of 'unauthorized' articles or service*."[4]

22.   It is important to note that Magnuson-Moss does not prohibit the warrantor from disclaiming liability for defects *caused* by unauthorized repairs, but the burden is on the manufacturer to prove that the unauthorized repair caused the defect.

23.   Finally, the FTC recently clarified that the disclaimer of liability does not need to be explicit.  Instead, "a warrantor would violate the MMWA if its warranty led a reasonable consumer exercising due care to believe that the warranty conditioned coverage 'on the consumer's use of an article or service identified by brand, trade or corporate name….'  Moreover, misstatements leading a consumer to believe that the consumer's warranty is void because a consumer used 'unauthorized' parts or service may also be deceptive under Section 5 of the FTC Act."[5]

24.   The animating purpose of Magnuson-Moss's anti-tying provision was explained by then-FTC-Chairman Lewis Engman in the early 1970s in the run-up to the Act's introduction:

---

[2] 15 U.S.C. § 2302(c).
[3] 16 C.F.R. § 700.10(c)
[4] *Id*. (emphasis added).
[5] Federal Trade Commission, *Final Action: Magnuson-Moss Warranty Act Interpretations; Rules Governing Disclosure of Written Consumer Product Warranty Terms and Conditions, Pre-Sale Availability of Written Warranty Terms, and Informal Dispute Settlement Procedures; and Ad Guides*, at p. 11 (May 22, 2015) (available at https://www.ftc.gov/system/files/documents/federal_register_notices/2015/05/150522mag-mossfrn.pdf) ("2015 FTC Final Action")

CLASS ACTION COMPLAINT

This [anti-tying] provision addresses the anticompetitive practice which the Commission has opposed in numerous court actions wherein a manufacturer uses a warranty unreasonably to tie his supplementary products or services to the warranted product. This leaves the consumer in the undesirable posture of losing his warranty protection if he purchases the supplementary items from another and perhaps less expensive source— even if he does so in complete ignorance of the warranty's provisions.[6]

25.   "In short," the FTC more recently reiterated, "[Magnuson-Moss's] anti-tying provision bars manufacturers from using access to warranty coverage as a way of obstructing consumers' ability to have their consumer products maintained or repaired using third-party replacement parts and independent repair shops."[7]

26.   In its Report accompanying to 2021 Financial Services and General Government Appropriations Bill, Congress specifically directed the FTC as follows:

*Consumer Repair Rights.*—The Committee is aware of the FTC's ongoing review of how manufacturers…may limit repairs by consumers and repair shops, and how those limitations may increase costs, limit choice, and impact consumers' rights under the Magnuson-Moss Warranty Act. Not later than 120 days after the enactment of this Act, the FTC is directed to provide to the Committee, and to publish online, a report on anticompetitive practices related to repair markets. The report shall provide recommendations on how to best address these problems.

27.   Subsequently, the FTC produced a report to Congress that "synthesized the knowledge gained from its July 16, 2019 workshop titled 'Nixing the Fix: A Workshop on Repair Restrictions' (the "Workshop"), public comments, responses to a Request for Empirical Research and Data, and independent research."[8] ("2021 FTC Report").

28.   Per the 2021 FTC Report, "[e]ven when a warranty does not explicitly require that repairs be performed by the original equipment manufacturer (OEM) using OEM parts, many manufacturers restrict independent repair and repair by consumers through [*inter alia*] Product designs that complicate or prevent repair;…Policies or statements that steer consumers to manufacturer repair networks;…[and] Disparagement of non-OEM parts and independent repair[.]"[9]

---

[6] Statement of Hon. Lewis A. Engman, Chairman, Federal Trade Commission, included in H. Rep. No. 93-17, at 58 (1973).

[7] FTC, *Nixing the Fix: An FTC Report to Congress on Repair Restrictions*, May 2021, at p. 5 (available at https://www.ftc.gov/system/files/documents/reports/nixing-fix-ftc-report-congress-repair-restrictions/nixing_the_fix_report_final_5521_630pm-508_002.pdf) (last accessed April 20, 2022) (hereinafter referred to as "2021 FTC Report")

[8] *Id.*

[9] *Id.*

29.     The 2021 FTC Report confirmed that MMWA-violative conduct was rampant in the marketplace:

> The Commission continues to receive reports of companies not complying with the MMWA. In response to staff's call for empirical research and comments related to the Workshop, several organizations reported that warranty tying continues to be prevalent in the marketplace. For example, the Education Fund of U.S. PIRG, the federation of state Public Interest Research Groups (PIRGs), submitted an October 2018 study analyzing warranties from 50 companies. U.S. PIRG concluded that 45 of the 50 companies had warranties that appeared to violate Section 102(c) of the MMWA. Likewise, the Specialty Equipment Market Association (SEMA) submitted a comment stating that it regularly receives complaints that automobile dealerships void automobile warranties if the dealership finds a specialty part (e.g., custom wheels) had been installed on the automobile, regardless of whether the specialty part caused the automobile to malfunction. Other commenters submitted information claiming that certain warrantors either expressly or by implication continue to condition warranty coverage of the use of particular products or services.
>
> …Tying is illegal where the effect is to impair competition and harm consumers in the market for either the tying product or the tied product.[10]

**B.     Defendant's Warranty Leads a Reasonable Consumer to Believe That Third-Party Repair is Prohibited.**

30.     Defendant's Warranty, and additional representations related thereto, lead consumers to believe that third-party repair will void the warranty.

31.     For example, Defendant's Warranty states, in pertinent part:

> This limited warranty applies only to hardware components of the Device that are not subject to accident, misuse, neglect, fire or damage from other external causes, alteration, repair, or commercial use.[11]

32.     Defendant's warranty explicitly disclaims products that are "subject to…alteration [or] repair," but this is forbidden under Magnuson-Moss.  In 2018, the FTC "sent warning letters to six major companies that market and sell automobiles, cellular devices, and video gaming systems in the United States."[12]  Among the challenged provisions included the following statements:

---

[10] *Id.*
[11] Amazon.com, "One-Year Limited Warranty for Amazon Devices or Accessories" (available at https://www.amazon.com/gp/help/customer/display.html?nodeId=201014520).
[12] FTC, "FTC Staff Warns Companies that It Is Illegal to Condition Warranty Coverage on the Use of Specified Parts or Services," (April 10, 2018) (available at https://www.ftc.gov/news-events/news/press-releases/2018/04/ftc-staff-warns-companies-it-illegal-condition-warranty-coverage-use-specified-parts-or-services)

- The use of [company name] parts is required to keep your . . . manufacturer's warranties and any extended warranties intact.
- This warranty shall not apply if this product . . . is used with products not sold or licensed by [company name].
- This warranty does not apply if this product . . .  has had the warranty seal on the [product] altered, defaced, or removed.[13]

33.     The FTC further stated that companies should review additional promotional materials and representations surrounding their warranties, so as not to create confusion among consumers.[14]

34.     Despite the unambiguous requirements of Magnuson-Moss, Amazon continues to represent to its customers both explicitly and implicitly that third party repair—indeed, merely *opening* its products—will void the customer's Warranty. These Magnuson Moss-violative representations—which have been in effect for years—still lead consumers to believe that their warranties are voided by third party repairs.

**C.     The Significance of Third-Party Repair of Consumer Products.**

35.     Beyond unlawfully proscribing customers' federal consumer protection rights, Defendant's conduct further harms consumers by stifling the third-party repair industry, thereby allowing Defendant (and comparable device manufacturers who engage in similar practices) a monopolistic grasp on the repair of its own products. This harms consumers in multiple ways.

36.     First, the stifling of competition drives up the cost of repair and limits a consumer's ability to have their products fixed in a timely manner.  Commonly, a warrantor's authorized service centers will have wait times that are untenable for devices that a consumer regularly relies on.  In one example, a consumer's refrigerator had a faulty compressor and the warrantor (LG) told her that its authorized servicers could not fix the appliance for up to a month.[15]  Obviously, a household cannot do without refrigerated food for a month, but there are countless other appliances and devices that we rely on daily, and doing without them for weeks—or even days—can cause profound disruptions in our daily lives.

---

[13] *Id*.
[14] *Id*.
[15] US PIRG, Warranties in the Void II, (April 8, 2021) at p. 18 (available at https://uspirg.org/sites/pirg/files/reports/Warranties%20in%20the%20Void%20II_USPEF_April_2021_Final.pdf)

37.    This problem has become only more acute in the wake of the pandemic, when appliance repair demand surged. Use of home appliances drastically increased as people are home more, and fewer people buying new appliances as both retail operations were restricted and the supply chain was interrupted by COVID-19.[16] The rise in repair needs in turn leads to delays in warranty service. When consumers are unable to get a necessary appliance repaired in a timely manner under warranty terms, there is a real need to hire a third-party repair technician to solve the issues or attempt the repair themselves.

38.    Second, it limits access to essential electronics, more broadly. Consumer electronics, in general, are the subject of ongoing shortages. An Associated Press report found that the increased demand and supply chain challenges posed by the pandemic had resulted in shortages around the country.[17] Kinks in the semiconductor supply chain are now posing an additional threat to the supply of new products.[18] Reducing barriers to repair allows older consumer products to be refurbished more easily, thereby expanding the available supply.[19]

39.    These shortages notwithstanding, Defendant's anticompetitive practices enables it (and similarly-situated companies) to force consumers to buy new products through planned obsolescence. When it costs almost as much to repair an existing product as it does to buy a new version of the same product, consumers will likely opt to buy the new product. Whereas, in a repair marketplace where costs are lowered through competition, it is cheaper to repair an existing piece of electronics than to buy a new one.

40.    Against this backdrop of scarcity, it is more important than ever that consumers be allowed to maintain and repair their devices without restriction.

---

[16] Youn, Soo. "Ovens, dishwashers and washing machines are breaking down like never before. But there's nobody to fix them." *The Washington Post*. October 22, 2020. https://www.washingtonpost.com/road-to-recovery/2020/10/22/appliance-repair-services-pandemic/

[17] Jocelyn Gecker and Michael Liedtke, *AP Exclusive: US Faces Back-To-School Laptop Shortage,* (Aug. 22, 2020), https://apnews.com/article/01e9302796d749 b6aadc35ddc8f4c946.

[18] Hyunjoo Jin, Douglas Busvine, and David Kirton, *Analysis: Global chip shortage threatens production of laptops, smartphones and more,* Reuters, (Dec. 17, 2020), https://www.reuters.com/article/us-chip-shortage-analysis/analysis-global-chip-shortage-threatens-production-of-laptops-smartphones-and-more-idUSKBN28R0ZL.

[19] 2021 FTC Report, *see, Note 8, supra.*

- 9 -

41.     To date, Defendant has done nothing to proactively alert consumers to their rights under federal law. Defendant's unlawful behavior, coupled with its failure to affirmatively alert consumers of their rights, has created and continues to create an ongoing injury.

## PLAINTIFF'S SPECIFIC ALLEGATIONS

42.     On or about June 21, 2021, Plaintiff purchased a new Product, manufactured by Defendant.  This Product was—and remains—subject to Defendant's Warranty.

43.     At present, Plaintiff is unable to repair his Product via a third party, independent repair service without purportedly voiding his Warranty.  However, this condition of the Warranty is unlawful, and has caused Plaintiff injury.

44.     Further, Plaintiff anticipates buying a new Product in the future, and would consider purchasing a Product from Defendant, but does not wish to have his rights under Magnuson-Moss thwarted by Defendant's unlawful tying provisions in its Warranty.

## CLASS ALLEGATIONS

45.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth.

46.     Plaintiff brings this action on behalf of himself and all other similarly-situated persons as a class action pursuant to Code of Civil Procedure section 382.

47.     Plaintiff seeks to represent a class composed of and defined as follows (the "Class"):

All citizens of California who purchased a product subject to Defendant's Warranty within the Class Period.[20]

48.     Plaintiff reserves the right to modify or refine the Class definition based upon discovery of new information or in order to accommodate any concerns of the Court.

49.     **Ascertainable Class:** The members of the Class are readily ascertainable. The Class definition identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description. Other than by direct notice, alternatively proper and sufficient notice of this

---

[20] As used herein, and subject to Plaintiff's reservation of rights to amend her definition, "Class Period" means one year prior to the date of filing of this Complaint, through the date of class certification.

CLASS ACTION COMPLAINT

action may be provided to Class members through notice published in newspapers or other publications.

50. **Numerosity:** The proposed Class is so numerous that joinder of all members would be impracticable. The precise number of Class members is unknown at this time but can be readily determined from public records and Defendant's records. Plaintiff reasonably estimates that the Class is likely to include over a thousand members.

51. **Commonality and Predominance:** A well-defined community of interest in the questions of law or fact involving and affecting all members of the Class exists, and common questions of law or fact are substantially similar and predominate over questions that may affect only individual Class members. The questions of law and fact common to Plaintiff and the Class include, among others, the following:

      i. Whether Defendant's acts and practices complained of herein violate Magnuson-Moss; and

     ii. the appropriate injunctive relief to ensure Defendant no longer illegally conditions its warranties on the exclusion of third-party repair.

52. **Typicality:** Plaintiff is a member of the Classes he seeks to represent. Plaintiff's claims are typical of the Class members' claims because they all were injured as a result of Defendant's violation of Magnuson-Moss.

53. **Adequacy of Representation:** Plaintiff is an adequate representative of the Class he seeks to represent and will fairly and adequately protect the interests of the Class. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel, experienced in litigation of this nature, to represent him and the Class. There are no conflicts between Plaintiff and the unnamed class members. Plaintiff anticipates no difficulty in the management of this litigation as a class action.

54. To prosecute this case, Plaintiff has chosen the undersigned law firm, which is very experienced in class action litigation and has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

55.     **Superiority.**  A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

      i.     Joinder of all class members would create extreme hardship and inconvenience for class members as they reside throughout the state;

      ii.     Individual claims by class members are impractical because the costs to pursue individual claims may exceed the value of what any one class member has at stake.  As a result, individual class members may have no interest in prosecuting and controlling separate actions;

      iii.    There are no known individual class members who are interested in individually controlling the prosecution of separate actions;

      iv.    The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

      v.     Individual suits would not be cost effective or economically maintainable as individual actions; and

      vi.    This action is manageable as a class action.

56.     The Class is not so large that it would be unmanageable, and no difficulties are foreseen providing notice to individual claimants. Class members can be readily identified using records and information kept by Defendant in the usual course of business and within its control.

57.     **Final Declaratory or Injunctive Relief**.  Plaintiff also satisfies the requirements for maintaining a class seeking declaratory and/or injunctive relief.  Defendant has acted or refused to act on grounds that apply generally to the proposed Class, making final declaratory or injunctive relief appropriate with respect to the proposed Class as a whole.

## CAUSE OF ACTION
### (Violation of the Magnuson-Moss Warranty Act
### 15 U.S.C. §§ 2301, *et seq.*)

58.     Plaintiff hereby incorporates by reference each of the preceding allegations as if fully set forth herein.

59.     Plaintiff and Class members are "consumers" as defined in MMWA, 15 U.S.C. § 2301(3).

60.     Defendant is a "warrantor" as defined in MMWA, 15 U.S.C. § 2301(5).

61.     Defendant's Warranty is a "written warranty" as defined in MMWA, 15 U.S.C. § 2301(6).

62.     Defendant's televisions are "consumer products," as defined in MMWA, 15 U.S.C. § 2301(1).

63.     Consistent with, *inter alia*, 15 U.S.C. § 2302(c) and 16 C.F.R. § 700.10, Defendant may not prohibit third-party repair as a condition of its Warranty.  Nor may Defendant make statements that would lead a reasonable consumer exercising due care to believe that the warranty conditioned coverage on the consumer's use of an article or service identified by brand, trade or corporate name unless that article or service is provided without charge to the consumer. 16 C.F.R. § 700.10; *see, also* 2015 FTC Final Action at 11[21].

64.     Yet this is precisely what Defendant does through the conduct complained of herein.  This includes, *inter alia*, its representation that the Warranty will not apply to products that are "subject to…alteration [or] repair."[22]

65.     The FTC has stated, either directly through statute and regulation or through guidance, that such representations violate Magnuson-Moss and its ant-tying provisions.

66.     Defendant's noncompliant warranties have harmed and continue to harm Plaintiff and the Class members by depriving them of the warranty benefits guaranteed to them by federal law.

67.     Plaintiff, Class members, and members of the general public have been harmed as a result of Defendant's unfair, unlawful, and fraudulent conduct alleged herein.

68.     As a result of such harm, Plaintiff and Class members are entitled to nominal damages, injunctive relief, and corresponding declaratory relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court:

---

[21] *See* Note 5, *supra*.
[22] *See,* Paragraphs 30-32, *supra*.

a. Certify this case as a class action, appoint Plaintiff as Class representative, and appoint Plaintiff's counsel to represent the Class;

b. Find that Defendant's actions, as described herein, constitute violations of Magnuson-Moss;

c. Award Plaintiff and the Class nominal damages;

d. Enter judgment against Defendant for all injunctive, declaratory, and other equitable relief sought;

e. Award all costs, including experts' fees, attorneys' fees, and the costs of prosecuting this action; and

f. Grant such other legal and equitable relief as the Court may deem appropriate.

Dated: June 21, 2022

                      **MILSTEIN JACKSON**
                      **FAIRCHILD & WADE, LLP**

By: _____
                      Gillian L. Wade, Esq.
                      Sara D. Avila, Esq.
                      Marc A. Castaneda, Esq.

                      *Attorneys for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT